UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SHANA SHAW,

                            Plaintiff,
                                                        1:23-CV-1623
v.                                                      (GTS/DJS)

BRIAN WOLTMAN, Ulster County Sheriff's Dep't,

                            Defendant.
_____

APPEARANCES:                                OF COUNSEL:

SHANA SHAW
    Plaintiff, *Pro Se*
11 Manchester Rd Apt 1
Poughkeepsie, NY 12601

COOK, KURTZ & MURPHY, P.C.                  ERIC M. KURTZ, ESQ.
    Counsel for Defendant
P.O. Box 3939
85 Main Street
Kingston, NY 12402

GLENN T. SUDDABY, United States District Judge

**<u>DECISION and ORDER</u>**

        Currently before the Court, in this *pro se* civil rights action filed by Shana Shaw

("Plaintiff") against Brian Woltman ("Defendant"), is Defendant's motion for summary

judgment.  (Dkt. No. 33.)   For the reasons set forth below, Defendant's motion is granted.

I.      **RELEVANT BACKGROUND**

        A.      **Plaintiff's Claims**

        Generally, liberally construed, Plaintiff's Complaint claims that, on December 26, 2021,

"Ulster County Sheriff Brian Woltman used excessive force [against her] for a[n] arrest with no

probable cause."   (Dkt. No. 1, at 4 [Plf.'s Compl.].)

**B.**    **Undisputed Material Facts**

Generally, the following facts have been asserted and supported through citations to admissible record evidence by Defendant in his Statement of Material Facts, and effectively admitted by Plaintiff in her response by failing to deny those factual assertions with supporting citations to admissible record evidence in matching numbered paragraphs.   (*Compare* Dkt. No. 33, Attach. 4 [Def.'s Rule 56.1 Statement] *with* Dkt. No. 41 [Plf.'s Response].)[1]

1.    On December 28, 2020, as Defendant was proceeding along Ulster Avenue in the Town of Ulster, he observed a black SUV commit a traffic infraction.

2.    This prompted Defendant to run the license plate of the black SUV with his onboard computer which is connected to a Law Enforcement Database, at which time he learned that it was registered to Plaintiff, whose license had been suspended.

3.    Defendant then activated his overhead lights, followed Plaintiff's vehicle into the parking lot of the Buffalo Wild Wings on Ulster Avenue, then exited his vehicle and approached the black SUV.

4.    After confirming that the operator of the vehicle was Plaintiff, Defendant asked her to get out of her vehicle.

5.    Plaintiff complied with this initial request at which time Defendant then advised her that she was under arrest for driving with a suspended license.

---

[1]    The Court notes that on December 27, 2023, Plaintiff received a courtesy copy of Local Rule 56.1 and page 42 of the District's *Pro Se Handbook* (both of which advised her of this requirement).   (Dkt. No. 2.)   She received a similar notice of this requirement on February 13, 2025.   (Dkt. No. 34.)

6.      Plaintiff then climbed back into her car, stated that she was calling her lawyer, and began reaching across the center console.

7.      Defendant directed Plaintiff to exit her vehicle and stated that she was under arrest.   He placed his right hand on Plaintiffs left arm, and attempted to pull her from the vehicle, though Plaintiff pulled away and stated that she could not be arrested.   This went on for approximately six minutes.

8.      During the six minutes in which he attempted to remove Plaintiff from her vehicle, Defendant radioed for backup. Another Officer arrived on scene shortly thereafter.

9.      After the arrival of the second officer, Defendant was able to successfully pull Plaintiff from the vehicle, at which time he placed her face-down on the ground and attempted to apply handcuffs.

10.      While Plaintiff was on the ground, Defendant directed her to place her hands behind her back; however, she did not.

11.      It was only with the assistance of the other officer that Defendant was able to place Plaintiff in handcuffs and complete the arrest.

12.      After Plaintiff was placed in handcuffs, she was seated in the rear of Defendant's vehicle so that a search of her SUV could be performed.

13.      Following the search of Plaintiffs vehicle, Defendant returned to his patrol vehicle and input Plaintiff's information into the Law Enforcement Database utilized by Ulster County.

14.      During the time Plaintiff was in the patrol vehicle, she made complaints of pain and a request for an ambulance was radioed in.   Upon the arrival of the ambulance, Plaintiff was removed from the rear of Defendant's patrol vehicle and placed on a stretcher, at which time she complained that her handcuffs had been applied too tightly.

3

15.     Before Defendant could even reach the handcuffs to loosen them, Plaintiff complained that he was hurting her.   After Defendant advised Plaintiff that he could not be hurting her because he was not even touching her, he was permitted to loosen the handcuffs and received verbal confirmation from Plaintiff that they were looser.

16.     Defendant retained the services of a Board Certified Neurologist, Dr. Jeffrey Degen, in connection with this action. Dr. Degen performed an examination of Plaintiff on November 20, 2024.

17.     Based upon his examination of Plaintiff and review of her medical records, Dr. Degen found no objective evidence to support the existence of any wrist injury or neurological deficits which were causally related to the incident that took place on December 28, 2020.

### C.     Summary of Parties' Arguments on Defendant's Motion

Generally, in support of his motion, Defendant asserts the following three arguments: (1) based on the current record, he had probable cause to arrest Plaintiff as a result of her driving with a suspended license; (2) based on the current record, he did not use excessive force during his arrest of Plaintiff; and (3) in any event, based on the current record, he is protected from liability as a matter of law by the doctrine of qualified immunity.   (Dkt. No. 33, Attach. 5.)

Generally, liberally construed with the utmost of special leniency, Plaintiff's response asserts the following nine arguments: (1) Defendant could not pull her over without probable cause; (2) his observing her failure to use a turn signal did not provide such probable cause; (3) his video camera footage does not support his claim that she failed to use her turn signal; (4) he unreasonably searched her car without her permission; (5) the ultimate dismissal of the charges against her means no probable cause existed for her arrest; (6) his traffic stop and arrest were racially discriminatory; (7) the resulting six-month sentence she served violated her Eighth

4

Amendment right against excessive punishment; (8) the injuries she sustained support her claim

of excessive force; and (9) Defendant's use of an unmarked police car violated a Senate Bill

introduced in 2023.   (Dkt. No. 41, at 2.)

## II.    RELEVANT LEGAL STANDARD

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that

there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as

a matter of law."   Fed. R. Civ. P. 56(a).   A dispute of fact is "genuine" if "the [record] evidence

is such that a reasonable jury could return a verdict for the [non-movant]."   *Anderson v. Liberty*

*Lobby, Inc*., 477 U.S. 242, 248 (1986).[2]   As for the materiality requirement, a dispute of fact is

"material" if it "might affect the outcome of the suit under the governing law . . . . Factual

disputes that are irrelevant or unnecessary will not be counted."   *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all

ambiguities and draw all reasonable inferences against the movant.   *Anderson*, 477 U.S. at 255.

In addition, "[the movant] bears the initial responsibility of informing the district court of the

basis for its motion, and identifying those portions of the . . . [record] which it believes

demonstrate[s] the absence of any genuine issue of material fact."   *Celotex v. Catrett*, 477 U.S.

317, 323-24 (1986).   However, when the movant has met its initial burden, the non-movant must

come forward with specific facts showing a genuine issue of material fact for trial.   Fed. R. Civ.

P. 56(a),(c),(e).

---

[2]      As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to
create a genuine issue of fact."   *Kerzer v. Kingly Mfg*., 156 F.3d 396, 400 (2d Cir. 1998)
[citation omitted].   As the Supreme Court has explained, "[The non-movant] must do more than
simply show that there is some metaphysical doubt as to the material facts."   *Matsushita Elec.
Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 585-86 (1986).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute-even if that non-movant is proceeding *pro se*.[3]  (Rather, the Court extends special solicitude to the *pro se* litigant by, in pertinent part, ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.)[4]  As has often been recognized by both the Supreme Court and Second Circuit, even pro se litigants must obey a district court's procedural rules.[5]

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically."  *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant.   *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(a)(3), 56.1(a).   What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 56.1 by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported

---

[3]    *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

[4]    *Cusamano*, 604 F. Supp.2d at 426 & n.3 (citing cases).

[5]    *Cusamano*, 604 F. Supp.2d at 426-27 & n.4 (citing cases).

by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement[6]–even where the non-movant was proceeding *pro se*.[7]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(a)(3).[8]   Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden.   *See* N.D.N.Y. L.R. 7.1(a)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at

---

[6]     Among other things, Local Rule 56.1(b) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.   N.D.N.Y. L. R. 56.1(b).

[7]     *Cusamano*, 604 F. Supp.2d at 427 & n.6 (citing cases).

[8]     *See, e.g., Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp*., 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

*2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

## III.   ANALYSIS

After carefully considering the matter, the Court grants Defendant's motion for the reasons stated therein.   (Dkt. No. 33, Attach. 5.)   To those reasons, the Court adds the following analysis.

The Court begins by observing that each of the three legal arguments asserted in Defendant's memorandum of law is supported by at least facial merit (demonstrating an entitlement to the relief requested, as a threshold matter).   (Dkt. No. 33, Attach. 5.)   However, in her response, Plaintiff fails to oppose Defendant's third argument (regarding qualified immunity), in violation of N.D.N.Y. L.R. 7.1(a)(3).   (*See generally* Dkt. No. 41.)[9]   As a result, this third argument is deemed consented to by Plaintiff.   This alternative ground alone (i.e., qualified immunity) can, and does, serve as a sufficient ground on which to grant Defendant's motion.

In any event, even if the Court were to base its decision on Defendant's first and second arguments, the Court would reach the same result.   This is because Plaintiff has only obliquely and/or unpersuasively opposed those two arguments.   (*See generally* Dkt. No. 41, at 2.)   *See also, supra*, Part I.C. of this Decision and Order (summarizing Plaintiff's responsive arguments).

For the sake of brevity, the Court will not linger on the fact that Plaintiff fails to specifically cite admissible record evidence in support of any of her nine arguments.   (*See*

---

[9]     The Court notes that on December 27, 2023, Plaintiff received a courtesy copy of Local Rule 7.1 and page 44 of the District's *Pro Se Handbook* (both of which advised her of this requirement).   (Dkt. No. 2.)   She received a similar notice of this requirement on February 13, 2025.   (Dkt. No. 34.)

*generally* Dkt. No. 41, at 2.)    Nor will the Court linger on the fact that some of those arguments

regard claims that are not pending in this action (e.g., a Fourth Amendment claim of

unreasonable search and seizure, an Eighth Amendment claim of excessive punishment, and a

Fourteenth Amendment claim of racial discrimination).    (*Compare* Dkt. No. 41, at 2 *with* Dkt.

No. 1, at 3, 4 [claiming that Defendant "used excessive force for an arrest with no probable

cause"].)

       More important is that Plaintiff is incorrect that a police officer needs probable cause to

conduct a traffic stop.   *See United States v. Wilson*, 699 F.3d 235, 242 (2d Cir. 2012) ("[T]he

Fourth Amendment requires that an officer making a traffic stop have probable cause *or*

*reasonable suspicion* that the person stopped has committed a traffic violation or is otherwise

engaged in or about to be engaged in criminal activity.") (emphasis added).

       She is also incorrect that the failure to use a turn signal does not constitute reasonable

articulable suspicion for such a traffic stop.    *See United States v. Goolsby*, 820 F. App'x 47, 49

(2d Cir. 2020) ("Miller had more than a reasonable suspicion that Goolsby committed a traffic

violation because he saw Goolsby fail to use his turn signal 100 feet before turning . . . .").

       She is also incorrect that the video camera footage in this case somehow undermines

Defendant's sworn testimony that she "cut [him] off" (without using her turn signal).    (*Compare*

Dkt. No. 33, Attach. 3 [video camera footage at 0:00.10-0:00.21] *with* Dkt. No. 33, Attach. 2, at

¶ 3 [Def.'s Affid.].)

       She is also incorrect to the extent she argues that Defendant did not have probable cause

to stop her for the alternative offense of driving with a suspended license (specifically,

aggravated unlicensed operation of a motor vehicle in the third degree in violation of N.Y. Veh.

& Traf. Law § 511[1]) based on the result of his entering her license plate into a Law

Enforcement Database, which informed him that her license had been suspended.   *See, e.g.,*
*Johnson v. Harron*, 91-CV-1460, 1995 WL 319943, at *9 (N.D.N.Y. May 23, 1995) (McCurn,
J.) ("At the time of plaintiff's detention and arrest, it was reasonable for defendants to credit the
DMV computer information as reasonably trustworthy, especially in light of the fact that they
had [with them] no documentary proof to the contrary. Thus, the court concludes that the
Customs Inspectors had probable cause to detain plaintiff and Defendant Triller had probable
cause to arrest him for driving with a suspended license.").

        She is also incorrect to the extent she argues that, before arresting her, Defendant had a
duty to drive to her home and examine the DMV paperwork that had purportedly lifted her
suspension and reinstated her license.   Of course, had Plaintiff had the purportedly exculpatory
paperwork with her at the time, then Defendant could not have turned a blind eye to it but would
have had to examine it.   *See Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir.2003) ("[A]n officer .
. . [may not] deliberately disregard facts known to him which establish [an exculpatory
defense]."); *see, e.g., O'Diah v. Corcoran*, 09-CV-3580, 2013 WL 1339413, at *4 (E.D.N.Y.
Mar. 29, 2013) ("[P]etitioner told Officer Eddings that there were papers in the van showing that
his license had been reinstated. . . . Officer Eddings looked at the letter that petitioner indicated
and determined that it was a letter from the Department of Motor Vehicles notifying petitioner of
the suspension of his license.").   However, he had no duty to expend the considerable time and
effort necessary to drive to Plaintiff home to search for exculpatory evidence.   *See Panetta v.
Crowley*, 460 F.3d 388, 396 (2d Cir.2006) ("Once a police officer has a reasonable basis for
believing there is probable cause, he is not required to explore and eliminate every theoretically
plausible claim of innocence before making an arrest. . . . Once officers possess facts sufficient
to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or

jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence.") (internal quotation marks omitted); *Celestin v. City of New York*, 581 F. Supp.2d 420, 432 (E.D.N.Y. 2008) ("[O]nce the evidence establishes probable cause, an officer is not required to continue investigating, sifting and weighing information, nor is an officer obligated to investigate the suspect's plausible claims of innocence.").

She is also incorrect that any subsequent reversal of her criminal conviction means there was no probable cause to arrest her.   *See Marcano v. City of Schenectady*, 38 F. Supp.3d 238, 259 (N.D.N.Y. 2014) (McAvoy, J.) ("[T]he eventual disposition of the criminal charges is irrelevant to the probable cause determination."); *see, e.g., Johnson*, 1995 WL 319943, at *9, n.11 ("The fact that the [DMV computer] information upon which defendants relied later proved to be erroneous does not negate the earlier finding of probable cause [for arrest for driving with a suspended license].").

Finally, and perhaps most importantly, based on the admissible evidence in this case (including, but not limited to, Defendant's affidavit, Dr. Jeffrey W. Degen's affidavit, Plaintiff's examination before trial, Defendant's response to Plaintiff's interrogatories, and the video camera footage), no rational fact finder could conclude that the forced use by Defendant against Plaintiff to conduct the arrest was excessive, given her prolonged active resistance and lack of permanent injury.   (*See, e.g.,* Dkt. No. 33, Attach. 3 [video camera footage of force used at 0:01:42-0:07:35].)

Generally, three elements must be objectively examined to determine whether a Fourth Amendment claim of excessive force has been established: "(1) the need for the application of force; (2) the relationship between that need and the amount of force that was used; and (3) the extent of the injury inflicted."   *Graham v. Connor*, 490 U.S. 386, 388, 397 (1989).   The proper

application of this test requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."   *Graham*, 490 U.S. at 396.

Here, liberally construed with the utmost of special leniency, Plaintiff's response (when combined with her examination before trial and the video camera footage) suggests that she bases this claim on the following: (1) the manner in which she was pulled from her vehicle, (2) the manner in which she was brought to the ground, (3) the tightness of her handcuffs following her arrest, and (4) her resulting physical injuries (which purportedly included a concussion, bruises all over her body, bleeding from her fingers, and nerve damage in her right hand).   (Dkt. No. 33, Attach. 6, at 23-24, 26-29, 31.)

However, Plaintiff adduces no admissible record evidence controverting the following six facts: (1) the fact that, upon being advised that she was under arrest for driving with a suspended license, Plaintiff then climbed back into her car and refused to exit despite repeated commands by Defendant to do so for approximately six minutes; (2) the fact that it was only with the assistance of the other officer that Defendant was able to remove Plaintiff from her vehicle; (3) the fact that, when Plaintiff was face down on the ground outside of her vehicle, she did not comply with Defendant's repeated directive to place her hands behind her back; (4) the fact that it was only with the assistance of the other officer that Defendant was able to place Plaintiff in handcuffs; (5) the fact that, in response to Plaintiff's complaint that her handcuffs had been applied too tightly, Defendant loosened the handcuffs and received verbal confirmation from Plaintiff that they were looser; and (6) the fact that a Board-certified neurosurgeon (Dr. Degen) concluded that, based on his review of Plaintiff's medical records, there was no objective

evidence of any permanent wrist injury or neurological deficits caused by the incident (but only "a very mild concussion" and "an injury to the superficial radial nerve, which has since healed"). (*See, e.g.,* Dkt. No. 33, Attach. 3, at ¶¶ 5-6 [Degen Affid.]; Dkt. No. 33, Attach. 3, at 5-7 [Letter dated 11/20/24 of Dr. Degen, listing the medical records reviewed].)   The Court notes that these facts are in no way controverted by the photographs, text messages, and medical records that Plaintiff improperly filed with the Court, even if they were *sua sponte* considered.   (Dkt. No. 42; Dkt. No. 46, Attach. 1-8.)

For each of these alternative reasons, Defendant's motion is granted.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 33) is

**GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

The undersigned certifies that an appeal from this Text Order would not be taken in good faith

Dated:  December 9, 2025
        Syracuse, New York

Glenn T. Suddaby
U.S. District Judge

13